UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARION DARBY,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**CHARLES ELLIS, et al.,**<br><br>　　　　**Defendants.** | Civil Action No. 20-12944 (FLW)<br><br>**MEMORANDUM & ORDER** |

　　This matter has been opened to the Court by Plaintiff Marion Darby, a pretrial detainee at Mercer County Correctional Center ("MCCC"), who has filed a civil rights complaint and application to proceed *in forma pauperis*. ECF Nos. 1, 1-1. Plaintiff has sued the State of New Jersey, Charles Ellis, Warden of MCCC, Phil Murphy, Governor of the State of New Jersey, Jared Maples, Director of New Jersey Office of Homeland Security and Preparedness, and Gurbir S. Grewal, Attorney General of the State of New Jersey, for civil rights violations in connection with his pretrial detention at MCCC during the novel coronavirus 2019 disease ("COVID-19") pandemic.

　　At this time, the Court will grant Plaintiff's application to proceed *in forma pauperis*. Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B). Under 28 U.S.C. § 1915(e)(2)(B)(ii), courts must dismiss the complaint before service if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

1

(quotations omitted).  Conclusory allegations do not suffice.  *Id.*  Because Plaintiff is proceeding pro se, the Court construes his allegations liberally.

The Complaint in this matter[1] is not a model of clarity, but Plaintiff generally asserts that the Defendants have subjected him to cruel and unusual punishment under the Eighth Amendment and violated his right to due process and equal protection under the Fourteenth Amendment.  *See* ECF No. 1-3, Statement of Facts at 1.  Plaintiff explains that the New Jersey Supreme Court issued a Consent Order, in conjunction with Governor Murphy's Executive Order #103, to release certain categories of inmates from the County jails due to the dangers associated with COVID-19.  Those inmates to be released included those with indictable offenses.  *See* id. at 1-2.  Later in the Complaint, Plaintiff refers to illegal indictments by prosecutors, but he does not explain why the indictments are illegal.  *See id.* at 7.

According to the Complaint, Warden Charles Ellis ("Warden Ellis") knew that a corrections officer had tested positive for COVID-19 in March 2020, and stated in several certifications that staff and inmates were notified.  *See id.* at 3.  Plaintiff asserts, however, that inmates were not notified due to privacy concerns, and another inmate came in contact with this particular corrections officer when the inmate was being transported for trial.  *Id.* at 3-4.  According to the Complaint, Warden Ellis also made contradictory statements indicating that corrections officers and staff should stay home if ill but subsequently stated that all staff should return to work.  *See id.* at 5.  Furthermore, Warden Ellis's certification stating that no additional corrections officers had tested positive for COVID-19 was misleading because staff were allegedly not being tested for COVID-19.  *Id.*  According to the Complaint, Governor Murphy's

---

[1] Plaintiff's Complaint refers to a statement of facts, which appears to be docketed at ECF No. 1-3.

Executive Order # 103 mandated social distancing of at least six feet, *see id.* at 3, but Warden Ellis allegedly failed to enforce social distancing at MCCC. *See id.* at 6. Plaintiff appears to assert that Warden Ellis is responsible for the death or potential death of "plaintiffs" who contracted COVID-19 at Mercer County Correctional Center.[2] *See id.* at 8.

Plaintiff further alleges that Warden Ellis has committed neglect, discrimination, retaliation, cruel and unusual punishment, and violated religious freedom, but he does not provide any well-pleaded facts about this alleged misconduct. Plaintiff also vaguely alleges the denial of health care, proper ventilation, and fresh air, as well as personal abuse and pain and suffering, but does not provide any factual support for these assertions either. *See id* at 8. Plaintiff alleges that the medical staff at Mercer County Correctional Center is ineffective and failed to prescribe antibiotics for inmates diagnosed with COVID-19. *Id.*

Finally, Plaintiff alleges that the State of New Jersey does not have permission to test Plaintiff for COVID-19 and "fraud [sic] the signature of Plaintiff." *Id.* at 8.

Plaintiff seeks ten million dollars to prevent any further "miscarriage of justice." *See id.* at 9. Plaintiff has also attached to his Complaint numerous "exhibits," including portions of the Consent Order issued by the New Jersey Supreme Court, several certifications sworn by Warden Ellis, various declarations of medical professionals regarding COVID-19, and partially redacted criminal documents for other inmates. *See* Exhibits.

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983. To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the

---

[2] Alternately, Plaintiff may be asserting that Warden Ellis would be responsible for Plaintiff's death if he contracted COVID-19.

conduct deprived the plaintiff of a federally secured right.  *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).

From the outset, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Therefore, Plaintiff's § 1983 claims against the State of New Jersey are dismissed <u>with prejudice</u> for failure to state a claim upon which relief may be granted.

The Court next assesses Plaintiff's § 1983 claims against Warden Ellis in his personal capacity.  The Court liberally construes Plaintiff to assert that his detention at MCCC during the COVID-19 pandemic amounts to punishment.[3]  In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty.  *Hubbard v. Taylor* 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*).  The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate governmental purpose."  *Hubbard II*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 538).  "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective."  *Id.* at 236 (quoting *Bell*, 441 U.S. at 549).  The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose.  *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d. Cir. 2020) (citing *Hubbard I*, 399 F.3d 150, 159–160 (2005))*; see also*, *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983) (though double-bunking involved cramped,

---

[3] Although Plaintiff cites to the Eighth Amendment, he is a pretrial detainee and his conditions of confinement claims are assessed under the Fourteenth Amendment.

crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on "many privileges and rights." *Bell*, 441 U.S. at 545–46.  Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546; *see also Hope*, 972 F.3d at 326.  As the Supreme Court cautioned in *Bell v. Wolfish*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 540 n. 23 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 584 (1984) (noting the "very limited role that courts should play in the administration of detention facilities").

Here, Plaintiff provides no well-pleaded facts about any hardships or deprivations he faced at MCCC in connection with the COVID-19 pandemic, as required to state a conditions of confinement claim.  In addition, although Plaintiff provides a laundry list of additional alleged violations of his civil rights, including due process, equal protection, and freedom of religion, he does not provide any facts to support these conclusory allegations.  Indeed, Plaintiff's Complaint barely provides any facts about his own experiences at MCCC at all.

Instead, Plaintiff emphasizes allegedly untrue or misleading statements made by Warden Ellis in his capacity as Warden.  The fact that Warden Ellis failed to disclose to inmates that a corrections officer had COVID-19 in March 2020 or that Warden Ellis made contradictory

statements or misleading statements about testing staff for COVID-19 or the protocols for their return to work after illness do not amount to constitutional violations in the context of Plaintiff's Complaint.

In light of the substantial deference courts must provide to the judgment of corrections officials and the lack of well-pleaded facts regarding the types and length of deprivations Plaintiff endured at MCCC or the ways in which Warden Ellis's alleged misconduct caused harm to Plaintiff, the Court will dismiss <u>without prejudice</u> Plaintiff's claim that his pretrial detention during the COVID-19 pandemic amounts to punishment.

It is also possible that Plaintiff is attempting to assert that Warden Ellis and/or medical staff at MCCC acted with deliberate indifference to Plaintiff's vulnerability to COVID-19. *See Helling v. McKinney*, 509 U.S. 25, 34–35 (1993) (recognizing claim of deliberate indifference of officials to exposure to tobacco smoke that poses unreasonable health risk); *see also Hope*, 972 F.3d at 329 (recognizing immigration detainees' claims of deliberate indifference based on their vulnerabilities to COVID-19 due to their ages or medical conditions); *Palakovic v. Wetzel*, 854 F.3d 209, 224 (3d Cir. 2017) (particular vulnerability to suicide due to mental health conditions); *Natale*, 318 F.3d at 582 (particular vulnerability due to insulin dependent diabetes). To establish deliberate indifference, Plaintiff must show the particular defendant knew of and disregarded an excessive risk to his health and safety. *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff does not state a claim for relief merely because he may have been exposed to COVID-19 at MCCC. In *Hope v. Warden*, the Third Circuit rejected the petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate their risk of exposure in order to comply with constitutional mandates. *See* 972 F.3d at

329. Thus, a detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness. *See id.* at 330 (citing *Natale*, 318 F.3d at 582). Here, Plaintiff has not provided any facts about his medical needs or vulnerabilities, or provided sufficient facts showing that Warden Ellis or any other prison officials were deliberately indifferent to those serious medical needs. Even if medical staff failed to provide antibiotics to Plaintiff to treat COVID-19, this allegation fails to state a claim for relief, as COVID-19 is a virus, which is not treated with antibiotics.[4] There are no allegations that the medical staff failed to treat Plaintiff at all. For these reasons, the Court will dismiss the inadequate medical care claims <u>without prejudice</u> as to Warden Ellis and/or medical staff at MCCC.

      As to the remaining individual Defendants, the federal claims are dismissed without prejudice for failure to state a claim for relief, as there are insufficient allegations as to how these individuals were involved in the alleged wrongs, and they may not be held liable under a theory of respondeat superior for the violations of their subordinates. It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *Batts v. Giorla*, 550 F. App'x. 110, 112 (3d Cir. 2013). Furthermore, § 1983 liability context, requires a "showing of direct responsibility" by the named

---

[4] "According to the World Health Organization, antibiotics do not work against viruses. They only work on bacterial infections. COVID-19 is caused by a virus, so antibiotics do not work. Antibiotics should not be used as a means of prevention or treatment of COVID-19. They should only be used as directed by a physician to treat a bacterial infection." *See* New Jersey COVID-19 Information Hub, available at https://covid19.nj.gov/faqs/coronavirus-information/testing-and-treatment/are-antibiotics-effective-in-preventing-or-treating-the-covid-19#:~:text=No.%20According%20to%20the,treat%20a%20bacterial%20infection (last visited Feb. 4, 2021).

defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] ... of any constitutional rights," *Rizzo v. Goode*, 423 U.S. 362, 376–77, (1976)—including theories of vicarious or respondeat superior liability, *see Iqbal*, 556 U.S. at 676; *see also Merklin v. United States*, 788 F.2d 172, 175 (3d Cir. 1986). Instead, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677 (emphasis added). Because Plaintiff has not provided sufficient facts showing how Defendants Phil Murphy, Jared Maples, and Gurbir S. Grewal violated his civil rights, the Court will dismiss the federal claims <u>without prejudice</u> as to these Defendants.

      The Court further notes that it is not clear whether Plaintiff is attempting to assert claims on behalf of other inmates, which he may not do. Plaintiff lacks standing to pursue claims on behalf of other inmates, and courts have further held that a prisoner proceeding pro se is "inadequate to represent the interests of his fellow inmates in a class action." *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself); *see also Fennell v. Penchishen*, 2019 WL 199905, at *1 (E.D. Pa. Jan. 14, 2019)(explaining same). Thus, to the extent Plaintiff seeks to bring claims on behalf of other inmates, those claims are dismissed <u>without prejudice</u>, and Plaintiff may not file an Amended Complaint asserting such claims.

Plaintiff also cites to the New Jersey Constitution and numerous state regulations, and it is possible that he is seeking relief under state law. The potential basis for this Court's jurisdiction over Plaintiff's remaining state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc., 983 F.2d at 1284–1285. Having dismissed the federal claims for relief, the Court denies supplemental jurisdiction over any potential state law claims.

9

The Court will administratively terminate this action at this time.  To the extent Plaintiff can provide additional facts to cure the deficiencies as to one or more of his federal claims, he may file an Amended Complaint within 45 days.[5]

**IT IS, THEREFORE**, on this 5th day of February 2021,

**ORDERED** that Plaintiff's application to proceed in forma pauperis is **GRANTED**; and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and Warden Charles Ellis; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40%

---

[5] If Plaintiff chooses to submit an Amended Complaint and the Amended Complaint states any federal claims, the Court will assess whether the Amended Complaint also states any state law claims at that time.

10

deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the § 1983 claims against the State of New Jersey are dismissed **WITH PREJUDICE** pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the remaining federal claims in the Complaint against Charles Ellis, Phil Murphy, Jared Maples, and Gurbir S. Grewal are dismissed **WITHOUT PREJUDICE** for failure to state a claim for relief pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that any claims brought by Plaintiff on behalf of other inmates are dismissed **WITHOUT PREJUDICE**, and Plaintiff may not reassert these claims in his Amended Complaint; and it is further

**ORDERED** that the Court declines supplemental jurisdiction over any remaining state law claims at this time; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint within 45 days to the extent he can cure the deficiencies in his federal claims for relief; and it is further

**ORDERED** that the Clerk of the Court shall **ADMINISTRATIVELY TERMINATE** this matter and send a copy of this Memorandum and Order to Plaintiff at the address on file.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge